IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 7** |
| | ) | |
| **R. SCOTT APPLING and** | ) | **Case No. 13-30083-JPS** |
| **CONNIE F. APPLING** | ) | |
|    Debtors | ) | |
| | ) | |
| | ) | |
| **LAMAR, ARCHER & COFRIN, LLP,** | ) | **Adv. Proc. No._____** |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **R. SCOTT APPLING,** | ) | |
|    Defendant | ) | |

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

Plaintiff, Lamar, Archer & Cofrin, LLP ("Plaintiff" or "Lamar Archer"), by the undersigned counsel, hereby states as its Complaint the following:

1.

This Court has jurisdiction under 11 U.S.C. § 523 and 28 U.S.C. § 1334. This adversary proceeding relates to this case under Chapter 7 of the Bankruptcy Code, now pending in this Court. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

2.

Plaintiff is a judgment creditor of Debtor/Defendant Scott Appling ("Defendant" or "Mr. Appling"), having a claim with an outstanding balance in the

1

amount of $104,179.60, plus interest, which amount is the judgment entered on behalf of Lamar Archer, by the Order and Judgment entered October 31, 2012, in the matter of *Lamar, Archer & Cofrin, LLP v. R. Scott Appling*, No. 12-HV-40-H (Hart Super., Ga.) (the "*Lamar Archer* lawsuit"). A true and correct copy of the Order and Judgment is attached hereto as Exhibit "A." Defendants have admitted, *in judicio* herein, the existence and validity of the Judgment through the filing of their Motion to Avoid Lien [Doc. 17].

3.

Plaintiff Lamar Archer is a law firm that represented Defendant Appling individually and his company Hartwell Enterprises, Inc. ("Hartwell Enterprises") pursuant to an employment agreement between the parties. Defendant Appling owned and was the CEO, CFO, Secretary and Registered Agent of Hartwell Enterprises (which was administratively dissolved in September 2010).

4.

Defendant Appling and Hartwell Enterprises purchased a business in June, 2004. Mr. Appling hired Lamar Archer on behalf of himself and Hartwell Enterprises to perform legal services regarding claims that Appling and Hartwell Enterprises had been defrauded in the purchase of the business.

5.

Lamar Archer filed a lawsuit on behalf of Appling and Hartwell Enterprises

2

in July, 2004, *Hartwell Enter., Inc., et al. v. Herrington Seating, Inc., et al.*, No. 04-FV-528-J/H (Franklin Super., Ga.) (the "*Hartwell Enter.* lawsuit").

6.

Pursuant to its fee agreement with Mr. Appling, Lamar Archer generally billed Mr. Appling and Hartwell Enterprises on a monthly basis for Lamar Archer's attorneys' fees and expenses incurred in the *Hartwell Enter* lawsuit.

7.

In March 2005, Lamar Archer contacted Mr. Appling regarding past due Lamar Archer invoices. As of the March 2, 2005 Lamar Archer invoice (No. 467), Mr. Appling and Hartwell Enterprises were delinquent in payment of Lamar Archer invoices in the amount of $66,710.57.

8.

By letter of March 9, 2005, Robert Lamar, a Partner of Lamar Archer, advised Appling that Lamar Archer would be forced to withdraw from its representation of him if Appling did not promptly bring Lamar Archer's past due fees and expenses current. A copy of Mr. Lamar's March 9, 2005 letter is attached hereto as Exhibit "B". At a meeting several days later, Mr. Appling advised Mr. Lamar that Appling's CPA had already prepared his 2004 tax return and that, as a result of the damages from the fraud perpetrated upon him, Appling was due a tax refund in excess of $100,000.00 (the "tax refund"). At the meeting, in the presence

3

of Walter Gordon, Lamar Archer's co-counsel in the *Hartwell Enter.* lawsuit, Mr. Appling represented that the tax refund would be sufficient to pay all outstanding legal fees and expenses of Lamar Archer. Appling promised Mr. Lamar that if Lamar Archer would continue to represent him in the *Hartwell Enter.* lawsuit, Appling would pay all past due legal fees and expenses of Lamar Archer, as well as future legal expenses of Lamar Archer, from the tax refund as soon as he received it.

9.

Based upon this promise, and in continuing reliance thereon, Lamar Archer did not withdraw from its representation of Mr. Appling, continued representing Appling and Hartwell Enterprises in the *Hartwell Enter.* lawsuit, incurred substantial, additional fees and expenses on Appling's behalf, and finally, in March, 2006, consummated the last of a series of settlements having a value to Mr. Appling of over $1,000,000.00.

10.

At all times from the March, 2005 meeting through and including the March, 2006 settlement, Mr. Appling was aware that Lamar Archer was continuing to perform legal work and incur expenses on his behalf in the *Hartwell Enter.* lawsuit and settlement thereof in reliance upon his promise to pay Lamar Archer's fees and expenses from the 2004 tax refund. In a meeting at Lamar Archer's offices in

November, 2005, Mr. Appling, in the presence of his wife, Connie Appling, again confirmed his promise to pay all Lamar Archer's fees and expenses from the tax refund.

11.

During the relevant time period, Mr. Appling did in fact receive a tax refund for the 2004 tax year in an amount sufficient to pay Lamar Archer's outstanding fees and expenses, but, without advising Lamar Archer of his receipt of such funds, spent or otherwise retained the funds. At no time during Lamar Archer's active representation of him did Appling ever advise Lamar Archer that he had received the tax refund, that he had retained it or spent it elsewhere, or that Lamar Archer should no longer rely upon his promise to pay it with the proceeds of said tax refund.

12.

By promising to pay Lamar Archer's legal bills from his tax refund, encouraging Lamar Archer to continue to provide legal services in reliance thereon, knowingly receiving the benefits therefrom, but then not paying the legal bills incurred in reliance on the promise, Mr. Appling obtained the legal services of Lamar Archer and caused Lamar Archer to incur fees and expenses, by "false pretenses, a false representation, or actual fraud," as set forth in 11 U.S.C. § 523(a)(2)(A).

13.

As a result of such conduct, Plaintiff Lamar Archer's claim against Debtor/Defendant Appling is non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, Plaintiff Lamar, Archer & Cofrin, LLP:

A. Demands judgment against Debtor/Defendant Appling for $104,179.60, plus interest, attorney fees, and costs;

B. Prays that this Court determine that this debt owed to Plaintiff Lamar Archer by Debtor/Defendant Appling is non-dischargeable; and

C. Prays for such other and further relief as is just and proper.

This 22nd day of April, 2013.

LAMAR, ARCHER & COFRIN, LLP

_____
Robert C. Lamar
GA State Bar No. 431175
Keith A. Pittman
GA State Bar No. 581270

50 Hurt Plaza, Suite 900
Atlanta, Georgia, 30303
Ph: 404/577-1777

6

## CERTIFICATE OF SERVICE

The within and foregoing COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT was served by U.S. mail as follows:

John Jay McArthur
P.O. Box 893
Athens, GA  30603

This 22nd day of April, 2013.

                                                    LAMAR, ARCHER & COFRIN, LLP

                                                    Robert C. Lamar

IN THE SUPERIOR COURT OF HART COUNTY
STATE OF GEORGIA

2012 OCT 31 PM 1:26

LAMAR ARCHER & COFRIN, LLP, )
)
        Plaintiff, )
)
v. ) CIVIL ACTION
) FILE NO. 12-HV-40-H
R. SCOTT APPLING, )
)
        Defendant. )

## ORDER AND JUDGMENT

Plaintiff having voluntarily dismissed its claim for attorney's fees in the matter and this Court's Order of October 10, 2012 having granted summary judgment to Plaintiffs on all other claims of Plaintiff's Complaint, it is hereby

ORDERED, that JUDGMENT be, and hereby is, entered on behalf of Plaintiffs against Defendant in the amount of $104,179.60.

SO ORDERED this __31st__ day of __October__, 2012.

Thomas L. Hodges, III, Judge
Superior Court, Northern Judicial Circuit

Order prepared and presented by:

Robert C. Lamar
GA State Bar No. 431175
LAMAR, ARCHER & COFRIN, LLP
50 Hurt Plaza, Suite 900
Atlanta, Georgia, 30303
Ph: 404/577-1777

Attorneys for Plaintiff

**EXHIBIT A**

**LAMAR, ARCHER & COFRIN, LLP**
ATTORNEYS AT LAW

THE HURT BUILDING
50 HURT PLAZA, SUITE 900
ATLANTA, GEORGIA 30303

ROBERT C. LAMAR

TELEPHONE (404) 577-1777
TELECOPIER (404) 577-9490
e-mail :rclamar@laclaw.net

### PRIVILEGED - ATTORNEY CLIENT COMMUNICATION

March 9, 2005

**VIA EMAIL AND
REGULAR U.S. MAIL**

Mr. Scott Appling
784 Lightwood Lane
Hartwell, Georgia 30643

RE: <u>Hartwell Enterprises, Inc. and R. Scott Appling v. Herrington Seating, Inc., Piedmont Polyurethane, Inc., John Davis, Norga Financial Serivces, Inc., and Sunbelt Business Brokers, Inc.</u>

Dear Scott:

    I had looked forward to our meeting on the 18th of March as a time to frankly address the status of your case, your current goals, how best to achieve your goals and the costs of obtaining those goals, including your outstanding and future attorneys' and CPA's fees. However, your email to David Davenport yesterday requires an immediate response prior to that meeting.

    You are at a critical crossroads of your financial future. In my opinion, a crossroads every bit as critical as that when you signed the purchase documents with Davis and NORGA and the SBA. While unpleasant, a few frank words of appraisal (a proverbial 2 x 4 to the forehead) may be appropriate.

    From the first day we met for lunch, throughout the litigation to date, and up through and including your email yesterday, you have portrayed yourself and acted as the ultimate "victim" of everyone else's wrongdoings and/or negligence. You were the victim of Davis' fraud. You were the victim of Beaver's coverup and malpractice. You were the victim of the SBA's sloppiness. You were the victim of inadequate legal services from the Blasingame firm. Now, you are the alleged victim of money hungry lawyers and accountants whose primary goal is to create unnecessary billable hours to further fleece you. Always the victim. Always someone else at fault. What you have failed to acknowledge is that you were also the "victim" of your own naivete, cheapness and poor judgment.

    You apparently lacked the financial background necessary to properly investigate and


EXHIBIT B

LAMAR, ARCHER & COFRIN, LLP

evaluate Davis' business, yet you failed to seek or obtain independent, outside advice. You say you relied on Beavers, but you never (knowingly) paid him a dime for his advice and knew Davis was his longtime client. You knew Walter was a good local lawyer, but failed to seek his advice. You finally did hire Blasingame's firm (another Davis contact), but then limited the scope of their engagement to being the scrivener of closing documents - specifically excluding them from any due diligence function. For a relatively small fee, any competent, independent business attorney or CPA could have quickly looked at the documentation you had prior to closing and recognized the glaring omissions in financial information and representations from the sellers.

You were in fact the victim of others' fraud and sloppiness. We believe we will be able to show this at trial and have worked hard to be prepared to do so. Unfortunately, the biggest problem at trial will be our inability to prevent the other side from showing your own lack of due diligence prior to closing. Unless and until you recognize and take responsibility for your own conduct, you will never be able to fairly evaluate your litigation options and prospects and will further harm your chances at trial. Lawyers and forensic accountants deal, realistically, with the facts and witnesses with which they are presented. We can provide (and have been providing) advice as to your realistic chances for relief and best tactics to get there. You will best be able to understand and respond to that advice if you are honest with yourself, accept responsibility where appropriate and work together with your attorneys and accountants as a team to achieve the best success possible.

You seem to have been extremely frustrated that we cannot guarantee rescission at trial. Equitable relief is, in the end, a very simple decision for the Court. It will do what it thinks is fair given all the facts before it. If the Court believes you did everything you should have done before this purchase and still were the unwitting victim of Davis' and Beavers' misrepresentations and that rescission is the only remedy which will serve justice, he may well then grant it. However, if he believes that there was some fault on both sides (i.e., that Davis and Beavers misrepresented things but that you could have or should have, through ordinary diligence, discovered or protected yourself from those misrepresentations) then he will probably reform the transaction to reflect the actual value of the business and real estate at the time of sale.[1] It is because we believe that the Defendants will probably be able to show some fault on your part in entering into this transaction, that we have advised you that reformation, rather than rescission, is the more likely remedy the Court will grant if we are successful at trial. The Defendants will try very hard at trial to prove that you were so negligent in protecting yourself in this transaction that you do not deserve any relief from the Court. This is a real problem which we <u>all</u> must confront vigorously <u>and honestly</u>.

With regard to your recent email accusations of over billing and wasted effort, I offer the following. I know you are frustrated by this whole situation. That is understandable and natural. I realize that you have paid and will have to pay substantial fees and expenses in order to best extricate yourself from the predicament you put yourself in. We have tried, and are trying, to do everything we can to obtain for you the best possible results in the most efficient and economical way possible. This is a complicated case both factually and legally. A lot of time and money has been spent necessarily sorting out exactly what you ended up buying, just to get to the starting point of how to best help you get relief. The stakes are high. The fees charged and expenses

---

[1]Technically, under this scenario, the Court would be authorized to deny you all relief.

LAMAR, ARCHER & COFRIN, LLP

incurred to date have been very reasonable given the work performed and results obtained. Trying to understand and help your financial situation, we have been very lenient (too lenient) in insisting that ours fees and expenses be kept current. It is bad enough to not be getting paid for our work, it is intolerable being subjected to seeming unending accusations and degrading comments and jokes.

You must understand that providing legal services is our business. The only way we survive as a business is through payment for our time spent serving our clients. While we align strongly with all of our clients, in business litigation such as this, all the benefits hopefully derived from it are yours and yours alone. The attorneys have no economic stake in the outcome and must justify their devotion of time and energy in behalf of the client solely upon payment of their fees. Given this, and speaking in behalf of Walter and our firm, our attorneys' fees and expenses must be brought current promptly or we will all be forced to withdraw from your representation. Remember, our fee agreement is with you personally as well as your corporation. Both the Court's Rules (Uniform Superior Court Rue 4.3) and our fee agreement with you entitle the attorneys to withdraw from your representation for non-payment of fees. The attorneys would also maintain an attorneys' lien on all of their work product until such time as their fees and expenses are paid. Lamar, Archer & Cofrin, LLP and the Gordon Law Firm will be forced to exercise their withdrawal rights if not _promptly_ brought current. Although I cannot speak for Mr. Porter, I am confident that he will not work much longer either until he too is brought current. We are willing to discuss some type of fixed fee for future legal work through trial in order to provide you some certainty as to the total financial cost through trial, but must be brought current now to proceed at all.

I look forward to our meeting on the 18th. Please be ready to address all of the above issues at that time.

Very truly yours,

Robert. C. Lamar

**LAMAR, ARCHER & COFRIN, LLP**
ATTORNEYS AT LAW

THE HURT BUILDING
50 HURT PLAZA, SUITE 900
**ATLANTA, GEORGIA 30303**

ROBERT C. LAMAR

TELEPHONE (404) 577-1777
TELECOPIER (404) 577-9490
e-mail rclamar@laclaw.net

April 22, 2013

**VIA FEDERAL EXPRESS**

Clerk, U.S. Bankruptcy Court
Middle District of Georgia
433 Cherry Street
Macon, GA 31201

    RE:   *R. Scott Appling and Connie F. Appling*, Debtors
          *Lamar Archer & Cofrin, LLP v. R. Scott Appling*; Case No. 13-30083-JPS

Dear Sir/Madam:

    Enclosed for filing in referenced action please find Complaint to Determine Dischargeability of Debt. Also, enclosed is an extra copy of that pleading which we ask that you stamp "filed" and return in the self addressed, postage paid envelope enclosed for that purpose.

    I am undergoing the CM/ECF On-Line Attorney Self Training to obtain a login ID and password.

    Thank you for your assistance.

                                Sincerely,

                                s/ Robert C Lamar (w/ exp permsn by VP)
                                Robert C. Lamar

RCL/vp
Enclosures.