Law Offices of
**Emmett L. Goodman, Jr., LLC**
544 Mulberry Street, Suite 800
Macon, Georgia 31201-2776

Emmett L. Goodman, Jr.                                                                                  Telephone (478) 745-5415
Brian Lee Causey                                                                                        Facsimile (478) 746-8655
Daniel L. Wilder
M. Kyle Floyd                                                                                  email: elgoodman@goodmanlaw.org

October 13, 2014

Hon. James P. Smith, Judge
United States Bankruptcy Court
Middle District of Georgia
433 Cherry Street
Macon, GA 31201

      Re:    Lamar, Archer, & Cofrin, LLP v. Appling,
               Adversary Proceeding No. 13-3042

Dear Judge Smith

      The above matter came before you for trial on September 18, 2014 in Athens and was concluded on September 23, 2014 in Macon. At the conclusion of trial, Mr. Davenport, counsel for Plaintiff, requested an opportunity for briefing of any issues desired, and the Court provided a 20-day window to do so. The following is Defendant's submission in aid of his closing argument.

      Plaintiff law firm objects to the discharge of its debt for attorney's fees and proceeds on a false representation theory under 11 U.S.C. § 523(a)(2)(A). Plaintiff has the burden of proof by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The general rule is that exceptions to discharge are to be narrowly construed in favor of the debtor. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir.1986). The debtor must be guilty of positive fraud not simply by implication. The standard is further heightened when the alleged misrepresentation concerns the promise of a future act as alleged here, and Plaintiff must prove that the debtor "had no intention of performing as promised." Allison v. Roberts, 960 F.2d 481 (5th Cir., 1992).

      Beginning with the elements of actual fraud, Plaintiff must first prove that a false representation was made. In this case, Plaintiff alleges that, in March 2005, Defendant Appling affirmatively stated that was entitled to a $100,000 tax refund and would pay all of Plaintiff's current and future billing with that money. Three witnesses testified to that point. Mr. Lamar, a named partner of the Plaintiff, testified that Appling said that the tax return was completed and he was just waiting on the money. Mr. Gordon, co-counsel to the Plaintiff law firm, testified that Appling stated that the tax return was not completed yet and did not remember any set number for the amount of the refund. Mr. Appling testified that he made no promise but did state that the tax refund was not completed yet

and, if he got all of the money that he was hoping for, there should be enough to cover the bill. The record will reflect the actual phraseology used by each.

Thus, Mr. Gordon and Mr. Appling agree on the point that no tax return was completed to give a number certain in March 2005 which undercuts Mr. Lamar's assertions to the contrary. Mr. Gordon testified for Plaintiff law firm and had no reason to favor Mr. Appling as demonstrated by Mr. Gordon's recounting of an altercation, or at least angry encounter, with Mr. Appling at Mr. Gordon's office in 2012. The tax return evidence along with testimony of Mr. Appling establishes that the refund was not finalized until summer of 2005 with the refund being received in October 2005 by Mr. Appling in the amount of approximately $59,000 rather than the $100,000 originally believed.

Aside from direct testimony of the witnesses, Plaintiff law firm was unable to produce any documentary evidence at all to support Mr. Lamar's version of the misrepresentation. No one in Plaintiff law firm, including Mr. Lamar, made any contemporaneous notes, sent any confirming letters, or made any billing reference at all to the alleged misrepresentation. In fact, the first mention of a tax refund in Plaintiff's written record occurs in a letter sent over a year later in summer 2006.

Plaintiff law firm further alleges a misrepresentation by Defendant Appling in November 2005 at a meeting at Plaintiff law firm's office in Atlanta. Originally, the complaint characterized this representation as Appling "had no intent to perform because he had already received and spent the refund." See, Order on Motion to Dismiss at 10. At trial, this allegation was abandoned. Plaintiff law firm subsequently attempted to show that Appling did not reveal that he had the tax refund money at that time and committed a misrepresentation of omission. Since Mr. Gordon acknowledged that he was not part of the November meeting, Plaintiff has only the testimony of Mr. Lamar in its favor. Direct testimony to the contrary was presented by both Defendant Appling and his wife, Connie Appling, both of whom attended the meeting. Both Applings testified that Defendant himself set up the meeting to discuss the tax refund and bill. Ms. Connie Appling made contemporaneous notes at and shortly after the meeting that were admitted into evidence. The notes reflect a conversation about the tax refund that contradicts Mr. Lamar's testimony and confirms the Appling testimony. Again, Mr. Lamar and Plaintiff law firm have no documentary evidence of any kind to shore up their testimony. Plaintiff's allegations are simply not supportable.

Even so, the Court questioned whether such an omission could be classified as a misrepresentation as a matter of law. The case law on this point does not rule out the possibility that silence as to a material fact may be actionable but as a claim for false pretense rather than false representation. See, In re Bucciarelli, 429 B.R. 372 (Bank. N.D.Ga. 2010) (Drake, J.), Bucciarelli was an adversary to recover attorney's fees by a divorce attorney. Debtor paid nothing but the original retainer fee. Debtor admitted to a third party that he never had any intent to pay the fees; the third party testified against him at trial. Finding that the third party had no motive for bias and testified in favor of the Debtor previously, the Court ruled that the debt was not dischargeable. The admission against interest did him in. Bucciarelli is instructive here for the contrast. The arguable third-party witness here, Mr. Gordon, although not as removed from the proceedings as the

third-party witness in <u>Bucciarelli</u> did <u>not</u> confirm Mr. Lamar's allegations.  This is close to an admission against interest by the law firm.

While Defendant Appling asserts that the Court's inquiry can end there as the first element cannot be proven by a preponderance of the evidence, Plaintiff law firm cannot prove the other elements either.  As far as the second element of reliance, Plaintiff claims reliance only in that it kept working, did not cease representation, and forbore to collect on its outstanding balance of approximately $60,000 as of March 2005.  Neither the billing numbers nor the timeframe really support this argument.  Beginning in March 2005, the billing records of Plaintiff law firm reflect billing charges of approximately $20,000, excluding finance charges, compared with approximately $25,000 in payments.  After November 2005, only a total of $227.00 was billed.  Further, billing records essentially ceased after substantial settlement of the case in early summer of 2005, somewhere between May and June of 2005.  The making of substantial payments does "not appear to be the sort of conduct of a person who is committing a fraud.  It appears to the Court that when the Debtor did get her money from the settlement she simply decided to pay other things which she considered more important." <u>In re Delong</u>, 2014 WL 4059790 (Bky. N.D.Ga. 2014) (Sacca, J.).

Considering justifiable reliance, Mr. Lamar himself testified that the Plaintiff law firm knew of Appling's financial problems during all relevant time periods.  This was shown through reports, such as those of Mr. Porter and Mr. Strickland, which were commissioned and sent to Plaintiff law firm regarding the valuation of the underlying business on whose behalf Plaintiff law firm was conducting the litigation.  There was even evidence in billing records showing that the firm on March 1, 2005, prior to any alleged misrepresentation, spoke with a bankruptcy attorney on Mr. Appling's behalf.  Ms. Phyllis Appling, Defendant Appling's mother, testified that that Plaintiff law firm asked her to pay the bill that same month.

Mr. Lamar's response to questions about reliance was oft-repeated, "He just believed his client."  Defendant submits that this was insufficient.  In <u>Field v. Mans</u>, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the Supreme Court required a creditor to "use his senses" and make "a cursory examination or investigation."  Defendant acknowledges that this Court has previously ruled on this issue in the context of a Rule 12(b)(6) motion but shows that the matter is a proper one for further inquiry after the conclusion of the evidence.  The relatively low bar must now be set higher.  The Court should examine the "particular qualities and characteristics of the plaintiff and circumstances of the particular case." <u>In re Vann</u>, 67 F.3d 277, 283 (11th Cir. 1995).  Other courts have interpreted the <u>Mans</u> standard to require more than just belief.  In <u>In re Husman</u>, 2013 WL 5134539 (Bky. W.D.Pa. 2013), the creditor filed an adversary to recover attorney's fees.  Debtor represented he owned real estate in Oklahoma that could be used to pay the fee.  The attorney investigated and contacted an Oklahoma title company but did not discover the falsity "due to the intricateness in crafting support for his claims."  That was justifiable reliance.  Even so the amount determined to be non-dischargeable was limited to extent to which obtained by false representation; $750 of the $11,000 debt was deemed to be non-dischargeable. See also, <u>In re Chase</u>, 372 BR 133 (Bky. S.D.NY 2007) (no justifiable reliance in adversary to recover attorney's fees where

record shows attorney was on notice of poor financial state of debtor and clearly knew of a "threat to its fees both those earned in the past and those about to be earned.")[1]

      For the sake of argument, even if the plaintiff was able to prove all of the other elements of its case, plaintiff law firm cannot prove damages. The only damages that Plaintiff law firm has alleged are forbearing to collect its debt.  The facts after trial now show that Defendant's actual payments exceed his charges after the March 2005 alleged misrepresentation. Thus, the new billing entails no damages at all.  If there is a measure of damages for forbearing to collect on the debt, Plaintiff law firm has not shown it.  There was no testimony about how Plaintiff would have collected the debt, what assets would have been available then but not later, or crucially what was the pecuniary loss due to the forbearance from collecting the debt from March 2005 to June 2006 when collection began.  The measure of damages in this case is clearly not the windfall of declaring that the whole debt is owed.  Judge Laney's case of In re Greenidge, 75 B.R. 245 (Bank. M.D.Ga. 1987) is instructive on this point.  While Judge Laney found that the whole debt *may* be deemed non-dischargeable based on the particular facts of the transaction, his holding there was that the creditor has not proven non-dischargeability as to the refinanced portion. 75 B.R. at 247.  The measure of damages was only the amount of new money advanced. Id.  This is precisely the situation that we have in this case.  Having shown that no net new value was extended by Plaintiff law firm and that Plaintiff law firm's prior existing debt was uncollectible both before and after any alleged false representation based on their own knowledge of Defendant's financial position, Plaintiff can prove no damages.  Plaintiff did not even attempt to do so at trial.

      As Plaintiff law firm is unable to prove a false representation by the preponderance of the evidence, cannot satisfy the other elements of its claim, and has no proven damages, judgment for Defendant should be entered by the Court.

      Very truly yours,

      /s/ Daniel L. Wilder

      DANIEL L. WILDER

DW/

CC: Mr. David W. Davenport, Via ECF

---

[1] The Chase court goes on to say that if the debtor did intend to perform at the time but subsequently decided he could not or would not, the initial representation was not false when made.